(70 App. Div. 179.)

## McNALLY v. FITZSIMONS et al.

(Supreme Court, Appellate Division, First Department. March 21, 1902.)

1. PARTITION—ACTION TO RESCIND—COMPLAINT—RESTITUTION.

Where, in an action to rescind a partly executed partition between tenants in common of real estate, the father of one of such tenants, as his sole heir, alleges that the partition deeds from the other tenants to his son were "made and executed," but thereafter in the complaint alleges that such "executed" deeds were never "delivered" to the grantee named therein, or to any person on his behalf, on demurrer the complaint should be construed as alleging that the deeds were not fully executed, and hence no offer to restore what such deeds would have conveyed if executed was necessary.

2. SAME—LUNATIC AS PARTY—GOOD FAITH—CAVEAT EMPTOR.

Where, on a partition between tenants in common, one of the tenants was a lunatic, and was represented by his committee, who was not familiar with the condition of the property, and who relied on the representations of the other tenants that the partition was fair and equitable,

such co-tenants were bound to the utmost good faith, and the rule of caveat emptor does not apply.

Appeal from special term, New York county.

Action by Michael McNally against Mary E. Fitzsimons and others. From a judgment overruling a demurrer to the complaint, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, INGRAHAM, and LAUGHLIN, JJ.

Chas. E. Miller, for appellants.

I. Newton Williams, for respondent.

VAN BRUNT, P. J. I concur in the conclusion arrived at by the court below, but I do not concur in that portion of the opinion in which the learned judge states that, in effect, the complaint contains an offer to restore what John P. McNally received. This action is undoubtedly brought for the purpose of rescinding an executed or partly completed partition between certain tenants in common of real estate. In consequence of the fact that the drawer of the complaint did not seem to comprehend what was necessary to the execution of a deed, we are left in doubt, from the allegations of the complaint, as to whether or not any deeds were executed to the deceased, John P. McNally. The pleader seems to be ignorant of the fact that, for the due execution of a deed, signature, sealing, and delivery are necessary. If the deeds of the property alleged to have been assigned to the deceased, John P. McNally, were executed, then it is clear that the complaint in this action is defective in not containing an offer to restore and alleging an ability to restore. Brewster v. Wooster, 131 N. Y. 473–477, 30 N. E. 489, and cases cited; Cox v. Stokes, 156 N. Y. 491–506, 51 N. E. 316. The complaint contains allegations that the deeds to McNally were executed, and it also contains allegations that they were not executed. It says, in paragraph 9 of the complaint, that the other tenants in common released to said John P. McNally the premises which were assigned to him; in paragraph 11 it speaks of the deed of a part of the premises which were assigned to John P. McNally in the partition as being made and executed; and in paragraph 12, speaking of the defendant Mary E. Fitzsimons, it alleges that she executed and caused or procured others to execute said deed to John P. McNally; and then in paragraph 14 it alleges upon information and belief that the deeds executed to said McNally in release or pretended release were never delivered to said McNally, or to said Harrigan, as his committee, or to any other person on his behalf. But, in view of the rule that a pleading is to be most favorably construed in the case of a demurrer where there are inconsistent allegations, I suppose that we are to take the allegation which will support the cause of action, rather than the one which is fatal to it. Assuming, therefore, that the deeds in question were never executed, because of nondelivery to the lunatic, or his committee, or to any other person on his behalf, there was no necessity of an allegation of an offer to restore. But if it should turn out upon the trial that these deeds had been executed by delivery, then, clearly, the bill would have

to be dismissed, because it did not contain any offer to restore, which, under well-settled principles of law, is absolutely necessary in the case of rescission, except under circumstances which are not applicable to the case at bar.

Upon the main question, it seems to us that, in view of the fact that the co-tenants were dealing with the committee of a lunatic, who had no knowledge in respect to the condition of the real estate, they were bound to the utmost good faith. The relations of the parties would have been entirely different had they not been dealing with a lunatic whose committee could not be supposed to be familiar with the condition of the property to be partitioned, and who, as is alleged, relied upon the representations made by the co-tenants of the lunatic that the partition was fair and equitable. The ordinary rule of caveat emptor cannot be held to apply to parties situated as were those who took part in this partition.

We think, therefore, upon the whole, that the judgment should be affirmed, with costs, with leave to the defendants to withdraw their demurrer and answer upon payment of costs in the court below and of this appeal.

INGRAHAM, McLAUGHLIN, and HATCH, JJ., concur. LAUGHLIN, J., concurs in result.

LAUGHLIN, J. This action is brought to set aside a voluntary partition of real estate made by heirs of Ann Cassidy, deceased, on the ground of fraud. These heirs were John P. McNally, Mary E. Fitzsimons, and Peter A. Cassidy. It is alleged in the complaint that plaintiff is the father and sole heir of John P. McNally, who died on the 18th day of July, 1900, at Newark, N. J.; that for 10 years prior to his death he was of unsound mind, and confined in an insane asylum in the state of New Jersey; that on the 25th day of March, 1898, one William Harrigan was duly appointed committee of his person and property by the orphans' court of Essex county, N. J.; that said Harrigan was thereafter, and on the 22d day of April, 1898, also duly appointed the committee of the person and property of said McNally by the supreme court of this state; that said Harrigan qualified as such committee, and continued to act as such until on or about the 1st day of January, 1899; that said Harrigan, neither as guardian nor as such committee, has ever received or held any money or property of said McNally; that soon after the appointment of said Harrigan as such committee the said Peter A. Cassidy and Mary E. Fitzsimons represented to him that the only real estate left by said Ann Cassidy consisted of a house and lot known as No. 208 East Fifty-first street, a house and lot known as No. 113 Avenue D, four houses erected on two lots known as Nos. 593 and 595 Second avenue, a moiety of two houses and lots known as Nos. 324 and 326 Cherry street, and proposed and suggested that he petition the supreme court for leave to make a partition of said real estate, and as a fair and equitable partition they proposed that they release to McNally the premises No. 208 East Fifty-first street and No. 113 Avenue D, and that he release to them as tenants in common the remaining premises; that they rep-

resented to him that this would be a fair and equitable partition of said property; that, acting upon such representations, said Harrigan, as such committee, petitioned the supreme court, and such proceedings were had in said court that a partition of said property was made as so proposed by said Cassidy and Fitzsimons pursuant to an order or judgment of said court made in said proceedings, and the premises Nos. 208 East Fifty-first street and 113 Avenue D were by said Fitzsimons and by the heirs of said Cassidy, who in the meantime had died, released to said McNally, and the other property was by said Harrigan, as such committee, released to said Cassidy before his death, and to said Fitzsimons; that in making such partition said Harrigan relied solely on the representations of said Cassidy and Fitzsimons or their duly authorized agents or attorneys to him as such committee and to the plaintiff that said partition was fair, honest, and equitable to said McNally, which statements and representations said Harrigan as such committee and the plaintiff relied on and believed to be true, especially as said Fitzsimons and Cassidy were the aunt and uncle, respectively, of said McNally, and professed at that time to be deeply interested in his welfare; that said representations were false and untrue, and were well known by said Cassidy and Fitzsimons to be false and untrue at the time they were made; that their falsity and untruthfulness were not discovered by said Harrigan or by the plaintiff until about the month of August, 1900; that neither said McNally nor said Harrigan, as his committee, would have been a party to said partition as made and consummated by the judgment of said court had they not believed said representations; that said partition was not fair or equitable and just in that the property set apart to Fitzsimons was worth a sum largely in excess of $8,000 more than that set apart to said McNally; that the building on premises No. 113 Avenue D had been reported or surveyed as an unsafe and dangerous building by the building department of the city of New York to the knowledge of said Cassidy and Fitzsimons, and they knew that the entire southerly gable wall of said building was unsafe and dangerous, and by the order of said building department had to be torn down and rebuilt or otherwise made safe, but that they fraudulently concealed these facts from the said Harrigan, as committee, and the court in said partition proceedings; that on or about the 1st day of August, 1900, the plaintiff first learned that at the time of the rendition of the judgment of the supreme court and of the making of the deed of premises 208 East Fifty-first street, so made and executed to said McNally, the title to said property was in dispute, and that one Theresa G. Graham claimed to be the lawful owner thereof by virtue of a deed from said Ann Cassidy; that an action was subsequently commenced by said Graham against the plaintiff and others to recover said property, which action is now pending in the United States district court for the Southern district of New York; that said Cassidy and Fitzsimons were fully aware, while said proceedings were pending, of the claim of said Graham to be the owner of said property, but they wrongfully and fraudulently concealed said fact from said committee, the plaintiff, and the court; that the deed to said McNally of the property set aside to him in said partition proceedings did

not convey all the right, title, and interest of said Peter A. Cassidy therein; that the deeds and releases to said McNally "in release or pretended release of the said real estate to him" were not delivered to him, or to his committee, or to any other person in his behalf, and for that reason were void; that the said Cassidy and Fitzsimons, without the knowledge, consent, or approval of said committee, agreed to pay the attorneys who represented him a large amount of money if said partition proceedings went through, and did pay to said attorneys at least the sum. of $2,500 for putting through said partition proceedings, which sum was grossly in excess of the reasonable value of the services of said attorneys, "so that said attorneys did not represent said committee, but represented the said Cassidy and the defendant Mary E. Fitzsimons"; "that the consents, both verbal and in writing, and all acquiescence made by the plaintiff, or by said Harrigan individually or as such committee, to the settlement of said estate," were all induced and brought about by the false and fraudulent representations and wrongful acts and misconduct of the said Peter A. Cassidy and the defendant Mary E. Fitzsimons; and that by reason of the said fraud and deceit practiced by said Fitzsimons and Cassidy the said McNally was wrongfully and unlawfully deprived of property of the value of at least $8,000, and, if the said Graham's claim is valid, of the value of at least $20,000, for which plaintiff has no adequate remedy at law. The complaint demands judgment that the said partition of the real estate be declared null and void; that any and all proceedings, orders, or judgments made therein be vacated and set aside, and that all deeds made in accordance with said order or judgment may be declared null and void, and ordered to be canceled of record; that the plaintiff be adjudged to be the owner in fee of an undivided one-third part of the real estate of which said Ann Cassidy died seised, and that the parties to this action account for all rents received by them respectively from said property, and for such other or further relief as to the court may seem just and equitable, together with costs and disbursements, to be paid by the defendants.

The plaintiff, as the sole heir of said McNally, may maintain this action. Prentice v. Achorn, 2 Paige, 30; Code Civ. Proc. § 1919. On demurrer a pleading is not to be construed strictly against the pleader. It is deemed that the demurrer admits not only every fact specifically alleged, but also every fact that may be inferred or implied therefrom by reasonable and fair intendment. Coatsworth v. Railway Co., 156 N. Y. 451, 51 N. E. 301; Railway Co. v. Robinson, 133 N. Y. 242, 30 N. E. 1008; Hewlitt v. Railroad Co., 63 App. Div. 423, 71 N. Y. Supp. 531; Waite v. Aborn, 60 App. Div. 521, 524, 69 N. Y. Supp. 967. It was said by the court in Foote v. Ffoulke, 55 App. Div. 617, 618, 67 N. Y. Supp. 368, that, "where different inferences can be drawn, one which will support, rather than one which will destroy, the action or remedy sought, should be adopted." If the allegations of a complaint are indefinite, the remedy is by motion · to' make them more certain and definite. Where the allegations are inconsistent, the remedy is, before answer, to compel an election. Sarasohn v. Miles, 52 App. Div. 628, 65 N. Y. Supp. 108, affirmed 169 N. Y. ——, 61 N. E. 1134; Tuthill v. Skidmore, 124 N. Y. 148, 26

N. E. 348; Einson v. Power Co. (App. Term) 34 Misc. Rep. 191, 68 N. Y. Supp. 836. Tested by these rules, or even by the somewhat inconsistent rules that with reference to matters of substance an ambiguous pleading, or one of doubtful meaning, must be construed most strongly against the pleader (Clark v. Dillon, 97 N. Y. 370; Bogardus v. Insurance Co., 101 N. Y. 328, 337, 4 N. E. 522; Bank v. Westcott, 118 N. Y. 468, 474, 23 N. E. 900, 16 Am. St. Rep. 771; Brown v. Machine Co., 44 App. Div. 598, 61 N. Y. Supp. 126; Hammel v. Washburn, 49 App. Div. 119, 62 N. Y. Supp. 1095), I think the complaint sufficiently states a cause of action for the relief demanded.

It is urged that the plaintiff should have offered to restore what he has received. According to one of the allegations of the complaint, he has received nothing, for the releases or deeds have not been delivered. It does not appear whether the releases or deeds have been recorded. But, assuming that they have been delivered and recorded, plaintiff asks to have the proceedings of the court and the deeds all canceled, and each party account for the rents and profits received. This will restore all parties to their position prior to the partition, and is, I think, a sufficient offer to restore, and may be consummated at the trial, or properly disposed of by the decree. Allerton v. Allerton, 50 N. Y. 670; Powell v. F. C. Lind Co., 49 App. Div. 286, 64 N. Y. Supp. 153. This being a suit in equity, the plaintiff's failure to tender restoration before suit brought, and demand restoration by defendants, is no bar to the action, but may affect the allowance of costs. Inasmuch, however, as some of the parties are infants, a suit was unavoidable. It is not very definitely alleged in the complaint just what proceedings were had in court, but the fair inference is that they were proceedings under sections 1590–1593 of the Code of Civil Procedure, which authorize a voluntary partition of real estate in cases of lunacy, and provide that the releases shall have the same effect as deeds would were the lunatic competent.

I doubt whether the action could be maintained merely upon the claim of Theresa G. Graham. Although an heir is not a purchaser from his ancestor within the protection of the recording acts, I think that when heirs who have come into the inheritance—as manifestly these heirs did—voluntarily partition the real estate upon the faith of the record title, each becomes a purchaser from the other, and is protected against an outstanding unrecorded deed of which he had no knowledge, where the grantee was not in possession. Sections 240, 241, Real Prop. Law (chapter 547, Laws 1896); Oliphant v. Burns, 146 N. Y. 218, 233, 40 N. E. 980; Tefft v. Munson, 57 N. Y. 97; Strough v. Wilder, 119 N. Y. 530, 23 N. E. 1057, 7 L. R. A. 555; Westbrook v. Gleason, 89 N. Y. 641. But the allegations of fraud and deception, by which an inequitable partition of the real estate was procured to the great damage of the plaintiff's incompetent ancestor, are sufficient, if established, to warrant the relief for which the action is brought.

It follows that the judgment should be affirmed, with costs.

McLAUGHLIN and HATCH, JJ., concur in result.