ABDALLAH, INC., v. WILLIAM B. MARTIN, JR., *d.b.a.*
SUNSHINE PECAN COMPANY, AND ANOTHER.[1]

June 25, 1954.

No. 36,406.

*Eugene A. O'Brien* and *John J. Doherty,* for appellant.
*Van Valkenburg, Blaisdell & Moss,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment of the district court entered pursuant to an order granting a motion for summary judgment.

The complaint in this action alleges in substance that plaintiff, Abdallah, Inc., on or about September 24, 1952, purchased 1,140 pounds of pecans from defendant William B. Martin, Jr., doing business as Sunshine Pecan Company; that the purchase was made through Martin's agent, defendant Smith-Flemming, Inc., not in-

---

[1]Reported in 65 N. W. (2d) 641.

volved in this appeal; that the pecans were represented to be in first-class condition and suitable for use in plaintiff's candy manufacturing and retailing business; that upon delivery of the pecans plaintiff accepted them and paid the agreed price of $798; that thereafter plaintiff used 570 pounds of the pecans in the manufacture of candy, some of which was sold to his customers; that sometime after that the customers returned the candy as being of poor quality and inedible; that thereupon plaintiff examined the remaining pecans, including those already used in the manufacture of candies, and discovered that they did not correspond to samples but were rancid, inedible, unmarketable, and of no value; that plaintiff promptly notified defendants of the character and condition of the nuts and offered to return and did return to Smith-Flemming, Inc., the 570 pounds of pecans which had not been used in the manufacture of candy; and that by reason of the foregoing plaintiff was damaged in the sum of $1,274 for the loss of the pecans, caramel, chocolate, and labor in the manufacture of the candies and $5,000 in the loss of sales, profits, and good will.

Defendant Martin interposed a separate answer. Insofar as it is pertinent to this appeal it was in substance that plaintiff offered to rescind the contract of purchase and to return the 570 pounds of pecans; that Martin accepted this offer of rescission and accepted the return of the pecans; that Martin thereupon paid plaintiff $399, being the selling price and cost of the pecans returned and balanced plaintiff's account in full; and that this action by plaintiff constituted an election of remedies by it and that the acceptance of the rescission and payment by Martin accomplished a full and complete accord and satisfaction of any and all claims between plaintiff and Martin arising out of the transaction.

On June 15, 1953, Martin and Smith-Flemming, Inc., moved the court for summary judgment, which was subsequently denied. On September 17, 1953, Martin alone moved for summary judgment. This motion was made pursuant to Rule 56.02 of the Rules of Civil Procedure and was based on all the files, records, and proceedings therein. Two affidavits were submitted in these proceedings, one by

Martin in support of his motion, and the other by plaintiff in opposition to the motion. The affidavit in support of Martin's motion, made by his attorney, was to the effect that on September 2, 1953, discovery depositions of plaintiff's bookkeeper and vice president were taken. Included in this affidavit were excerpts of testimony given by plaintiff's bookkeeper. It appears from this testimony that plaintiff received invoice No. C-6780, dated September 24, 1952, from Martin covering the 1,140 pounds of pecans originally purchased; that certain entries were then made in plaintiff's books indicating that plaintiff owed Martin $798 and that said amount had been paid by check; and that thereafter plaintiff received an invoice dated October 28, 1952, showing the purchase of 540 pounds of fancy large pecans for $432. It further appears that entries were made on plaintiff's books on November 1, 1952, indicating that plaintiff owed Martin $432 and that entries were also made indicating that $399 was debited the accounts payable of Martin on the basis of a credit memo received by plaintiff from Martin, thus leaving a balance of $33 apparently owed by plaintiff to Martin. On the credit memo it was stated: "Mdse. covered by Invoice No. C. 6780, Ret'd to Merchants Cold Stg."

The affidavit of plaintiff, resisting defendant Martin's motion for summary judgment, was made by its vice president, Glenn Oletzke. As far as pertinent to this appeal it stated that, after plaintiff discovered that the candies in which the pecans were mixed were unsalable, affiant contacted an employee of defendant Smith-Flemming, Inc. (agent for Martin), who agreed to accept a return of the unused pecans and suggested that affiant contact Martin concerning the pecans already used in the manufactured candy, and that thereupon affiant wrote Martin in an effort to negotiate a settlement of plaintiff's claim in respect to the pecans used in the manufacture of the candies. Affiant further stated that, at the time defendant Smith-Flemming, Inc., through its employee, offered to accept a return of the 570 pounds of pecans, plaintiff discussed with that employee the need for procuring more pecans for plaintiff's holiday business; that said employee advised plaintiff that it could procure a quantity of

the pecans of a different grade and at a different price; and that affiant (plaintiff) then ordered said pecans to replace those returned. Affiant vice president also stated that at no time until it was asserted in Martin's answer in this litigation did Martin or his agent assert or claim that the return of the 570 pounds of pecans would be or constitute a cancellation or rescission of the original contract or be an accord and satisfaction, nor did plaintiff ever agree that any of their actions or discussions constituted a complete settlement or an accord and satisfaction.

On October 7, 1953, the trial court issued its order granting Martin's motion for summary judgment.

Rule 56.03 of the Rules of Civil Procedure states in part:

"* * * The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

M. S. A. 512.69, remedies for breach of warranty, states:

"(1) Where there is a breach of warranty by the seller, the buyer may, at his election:

\* \* \* \* \*

"(b) Accept or keep the goods and maintain an action against the seller for damages for the breach of warranty;

\* \* \* \* \*

"(d) Rescind the contract to sell or the sale and refuse to receive the goods, or if the goods have already been received, return them or offer to return them to the seller and recover the price or any part thereof which has been paid.

"(2) When the buyer has claimed and been granted a remedy in any one of these ways, no other remedy can thereafter be granted."

It is Martin's position with respect to this action that the undisputed facts show that he is entitled to judgment as a matter of law, in that plaintiff in this action is seeking relief under § 512.69(1) (b) for breach of warranty but that plaintiff has already elected and

has exercised the remedy afforded by § 512.69(1)(d), which is to rescind the contract. Martin therefore claims that plaintiff's action is barred by § 512.69(2), inasmuch as it has claimed and has been granted a remedy as provided above and that, therefore, no other remedy can thereafter be granted.

Plaintiff takes the position that it cannot be stated conclusively by its pleadings, together with the affidavit for Martin, that it (plaintiff) has conclusively elected to rescind and is now pursuing an action inconsistent with this election. Rather, it is plaintiff's position that the record thus far shows, if it shows anything, that it has elected to affirm the contract, in that the record reflects that some of the pecans were returned and others delivered to replace them, all in pursuance of the original plan and intention to purchase the pecans.

The determinative issue on this appeal is whether on the record before us a rescission has been effected as a matter of law. Rescission has been defined as the unmaking of a contract. Butler Mfg. Co. v. Elliott & Cox, 211 Iowa 1068, 233 N. W. 669; Kunde v. O'Brian, 214 Iowa 921, 243 N. W. 594; Fuller v. Fried, 57 N. D. 824, 224 N. W. 668. It has also been stated that to rescind a contract is not merely to terminate it but to abrogate it and undo it from the beginning. 1 Black, Rescission and Cancellation (2 ed.) § 1. There are three general methods of effecting a rescission, namely (a) by mutual agreement of the parties; (b) by one of the parties declaring a rescission of the contract without the consent of the other if a legally sufficient ground therefor exists; and (c) by applying to the courts for a decree of rescission. 1 Black, Rescission and Cancellation (2 ed.) § 1.[2]

---

[2]Minnesota has recognized all three types of rescission. Raymond v. McKenzie, 220 Minn. 234, 19 N. W. (2d) 423; Mitchell v. Rende, 225 Minn. 145, 30 N. W. (2d) 27; Associated Cinemas v. World Amusement Co. 201 Minn. 94, 276 N. W. 7; Close v. Crossland, 47 Minn. 500, 50 N. W. 694; Reliance Engineers Co. v. Flaherty, 211 Minn. 233, 300 N. W. 603; Knappen v. Freeman, 47 Minn. 491, 50 N. W. 533; First Nat. Bank v. Blocker, 150 Minn. 337, 185 N. W. 292.

We are not concerned here with the problem of rescission by bringing an action, since plaintiff in this case is seeking damages by affirming the contract. In order to sustain the claim of Martin, there must have been either a notice by plaintiff of his election to rescind or mutual agreement to rescind. There is nothing in the record to indicate either an express notification of an election to rescind or an express mutual agreement to rescind. On the contrary, plaintiff in the affidavit by its vice president states that it ordered additional pecans (540 pounds according to invoice) to replace those it had returned and further states that until the time it received Martin's answer there had never been any discussion, claim, or assertion by any of the parties involved that the return of the 570 pounds of unused pecans would be a cancellation or rescission of the original contract. Therefore, the question still remains as to whether a rescission of a contract may be implied under the circumstances from the mere fact that the buyer, who had used half of the pecans, returned the unused portion upon discovery of a breach of warranty and defects, accepted pecans of a different quality, and then charged off on his books the amount due him from the seller. The situation is one of first impression in this state as far as we can ascertain.

A similar problem arose in Russo v. Hochschild Kohn & Co. 184 Md. 462, 41 A. (2d) 600, 157 A. L. R. 1070, in which the buyer of hair lacquer pads was allowed to maintain an action for damages after returning the unused portion of the goods and accepting a return of the purchase price. While the majority in that case granted the right to maintain the action under a statute similar to M. S. A. 512.70,[3] we like the reasoning set out in the special concurring opinion in which it was stated that rescission of a contract, like the making of a contract, is a matter of intention; that in case of a rescission by mutual consent such intention must be by both

[3]Under c. 512, sales of goods, § 512.70 provides:

"Nothing in this chapter shall affect the right of the buyer or the seller to recover interest or special damages in any case where by law interest or special damages may be recoverable, or to recover money paid where the consideration for the payment of it has failed."

parties involved, while in case of rescission for breach of warranty such intention must be only by the buyer with notice to the seller of his intention to rescind.

It is our opinion that intention may be inferred from conduct. Kundel v. Portz, 301 Mich. 195, 3 N. W. (2d) 61; Vincent v. Palmer, 179 Md. 365, 19 A. (2d) 183.

In Clyde Equipment Co. v. Fiorito (9 Cir.) 16 F. (2d) 106, involving an action for breach of warranty of a contract for the sale of certain machinery, part of the merchandise purchased was returned by the buyer, who received credit for the returned goods. The court stated that the mere fact that personal property sold under a contract is returned to the vendor and credit given therefor on the account does not constitute *ipso facto* a rescission of the contract. It also stated that whether or not property so returned and credited constitutes an abandonment of that part of the contract covering it is a matter of intention.

Our court, speaking generally on the problem of election of remedies, said in First Nat. Bank v. Flynn, 190 Minn. 102, 107, 250 N. W. 806, 808, 92 A. L. R. 1272:

"* * * it is a safe premise that a party should not be bound by an election unless he has pursued the chosen course to a determinative conclusion or *has procured advantage therefrom or has thereby subjected his adversary to injury.*"[4] (Italics supplied.)

The court in that case quoted from Friederichsen v. Renard, 247 U. S. 207, 213, 38 S. Ct. 450, 452, 62 L. ed. 1075, 1084, that "At best this doctrine of election of remedies is a harsh, and now largely

---

[4] In Coyle & Smith v. Baum, 3 Okl. 695, 41 P. 389, the supreme court was faced with a fact situation similar to the case at bar. There it was held that the return of unused oats and receipt back by the buyer of the price of the unused merchandise did not constitute a rescission of the contract but a new agreement by which a resale was made. In so holding, the court said (3 Okl. 710, 41 P. 395): "Coyle & Smith [seller] received and retained pay for the portion of the oats that were used before their poisonous quality was discovered and simple justice would require the allowance to Baum [buyer] of the damages he sustained in the use he made of the oats that were fed to his horses."

obsolete rule, the scope of which should not be extended." It further observed that, while any rule of law because of its necessary generality must be harsh in particular cases, no rule should be so unduly or harshly extended as to bind plaintiff by an election of remedies in that case.

In Schutz v. Tostove, 191 Minn. 116, 253 N. W. 372, 106 A. L. R. 701, this court was faced with the question whether the evidence presented constituted rescission by mutual agreement. Our court held that the question was to be determined as one of fact and not one of law.

In our opinion, rescission and return of the goods are not one and the same thing. In other words, a return of the goods in itself is not a rescission. Rather, it appears to us that return may be more properly classified as an element of rescission.[5] Rescission, the unmaking or abrogation of a contract, requires intent to do so. It may be conceded that in some cases a rescission might be inferred from the return of the goods, as where a buyer, on discovering a breach of warranty, demands to return *all* he has acquired under the contract and to receive back what he has paid.[6]

---

[5]This is further evidenced by the fact that in some cases a rescission may be accomplished without a return or offer to return the goods, as where the goods are absolutely worthless (3 Williston, Sales [Rev. ed.] § 610, p. 352, and cases cited therein) or where it would be useless or futile to offer to return the goods. Garbark v. Newman, 155 Neb. 188, 51 N. W. (2d) 315, and cases cited.

[6]Three states have held that a buyer, even after he has rescinded, may recover special damages under statutes similar to M. S. A. 512.70. Garbark v. Newman, 155 Neb. 188, 51 N. W. (2d) 315; Marko v. Sears, Roebuck & Co. 24 N. J. Super. 295, 94 A. (2d) 348; Russo v. Hochschild Kohn & Co. 184 Md. 462, 41 A. (2d) 600, 157 A. L. R. 1070. In New York there are two conflicting lower court decisions: Waldman Produce, Inc. v. Frigidaire Corp. 157 Misc. 438, 284 N. Y. S. 167 (holding that a buyer may recover special damages after rescinding), and Bennett v. Piscitello, 170 Misc. 177, 9 N. Y. S. (2d) 69 (holding that a buyer may not recover special damages after rescinding). Since the only issue presented in this case is whether or not the facts constitute a rescission as a matter of law, it is not necessary for us to decide at this time whether plaintiff could collect special damages if it is found on the trial of the case that it has rescinded.

In cases involving summary judgment we must take a view of the evidence most favorable to the one against whom the motion was granted. Shema v. Thorpe Bros. 240 Minn. 459, 62 N. W. (2d) 86; Purity Cheese Co. v. Frank Ryser Co. (7 Cir.) 153 F. (2d) 88; Michel v. Meier (W. D. Pa.) 8 F. R. D. 464. Here, plaintiff claims that it has at all times affirmed the contract. Further, there is no evidence that plaintiff returned the goods at the request of defendant back the purchase price. Rather, it might well be inferred from the evidence that plaintiff returned the goods at the request of defendant Smith-Flemming, Inc. We cannot infer as a matter of law that, because the pecans plaintiff received in exchange were of a different kind and quality, it conclusively intended to rescind the contract.

In order to permit a summary judgment under Rule 56.03, the pleadings, depositions, and admissions on file, together with the affidavits, must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. While a trial court must necessarily have considerable discretion in the matter of granting a motion for summary judgment, great care should be exercised in such matters so as to permit a litigant to have a right to a trial if there is a reasonable doubt as to the facts.

In Sartor v. Arkansas Gas Corp. 321 U. S. 620, 627, 64 S. Ct. 724, 728, 88 L. ed. 967, 972, the United States Supreme Court said with reference to summary judgment under Rule 56 of the Federal Rules of Civil Procedure that it—

"authorizes summary judgment only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, that no genuine issue remains for trial, and that the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try."

Viewing the evidence in the light most favorable to plaintiff, against whom summary judgment was granted, we cannot say from the pleadings and affidavits here that there is no genuine issue of material fact so that defendant Martin is entitled to judgment as a matter of law. On the contrary, it appears to us that the question

whether there was a rescission under the record here is a fact issue and that summary judgment should not have been granted against plaintiff.

Reversed.